UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DARNELL A. CLEMONS,                )
                                   )
        Petitioner,                )
                                   )
    vs.                            )        Case No. 4:18 CV 1285 (JMB)
                                   )
MICHELE BUCKNER,[1]                )
                                   )
        Respondent.                )

**MEMORANDUM AND ORDER**

This matter is before the Court on Darnell A. Clemons' petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (ECF No. 1).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

I.      **Procedural Background**

Petitioner Darnell A. Clemons ("Petitioner") is presently incarcerated at the Eastern Reception Diagnostic Correctional Center pursuant to the judgment and sentence of the Circuit Court of Saint Louis City.  Petitioner was charged with one count of forcible rape, one count of kidnapping, and two counts of armed criminal action.  The State filed a Memorandum of Nolle Prosequi as to the two counts of armed criminal action.  (ECF No. 9-9 at 2)

On December 4, 2013, a jury convicted Petitioner of one count of forcible rape (Count I) and one count of kidnapping (Count II).  (ECF Nos. 9-1 at 530 and 9-2 at 84-85)  The trial court sentenced Petitioner as a prior offender to consecutive terms of life on Count I, and 15 years on

---

[1] Petitioner is presently incarcerated at the South Central Correctional Center  ("SCCC") in Licking, Missouri.  Inasmuch as Michele Buckner  is superintendent of  SCCC  and thus Petitioner's custodian, she should be substituted for Stanley Payne as proper party respondent. Rule 2(a), Rules Governing Section 2254 Cases in United States District Courts.

Count II.  (Judgment , ECF No. 9-2 at 96-98)  The Missouri Court of Appeals affirmed Petitioner's convictions and sentences on direct appeal.  <u>State v. Clemons</u>, 460 S.W.3d 484 (Mo. Ct. App. 2015) (ECF No. 9-5).  Petitioner's motion for post-conviction relief, pursuant to Missouri Supreme Court Rule 29.15, was denied without an evidentiary hearing.  (Findings of Fact & Conc. of Law ("FFCL"), ECF No. 9-6 at 38-47).  On August 22, 2017, the Missouri Court of Appeals affirmed the denial of post-conviction relief.  <u>Clemons v. State</u>, 525 S.W.3d 217 (Mem), Cause No. ED104925 (Aug. 22, 2017) (ECF No. 9-9).

On August 3, 2018, Petitioner timely filed his petition for relief pursuant to 28 U.S.C. § 2254.  In the instant petition, Petitioner asserts three grounds for relief.  First, Petitioner contends that his trial attorney provided ineffective assistance by failing to prepare him for a guilty plea. (Petition, ECF No. 1 at 16)  Next, Petitioner alleges that his trial counsel rendered ineffective assistance by failing to seek an <u>Alford</u> plea.  (<u>Id.</u> at 17)  Finally, Petitioner asserts that his trial counsel provided ineffective assistance by failing to request a jury instruction for a lesser included offense.  (<u>Id.</u> at 17)  Respondent concedes that Petitioner properly presented these claims in his post-conviction appeal to the Missouri Court of Appeals.  (ECF No. 9-7)  The Missouri Court of Appeals denied these same claims on the merits. (ECF No. 9-9)

## II.  <u>Factual Background</u>[2]

On November 11, 2011, while returning to Covenant House,[3] Victim saw a fellow resident and an acquaintance ("Resident") and Petitioner at the bus stop and started a conversation with

---

[2] "The sufficiency of the evidence to support the convictions is not disputed."  <u>See</u> <u>State v. Clemons</u>, 460 S.W.3d 484 (Mo. Ct. App. 2015) (ECF No. 9-5 at 2).

[3] Covenant House is a transitional living facility for homeless teenagers and young adults between the ages of 16 to 22.  (Tr. 278-79, 359)  Covenant House had a 10:00 p.m. curfew for

them.  (ECF No 9-1, Trial Transcript at 278-81, 323, 325, 371-73)  Victim testified that she did not know Petitioner by name, but she had seen him before.  (Id. at 281, 283, 323-24)  Victim, Resident, and Petitioner boarded the bus, and as preferred, Victim sat in the back of the bus because she liked to see everything in front of her.  (Id. at 281-82, 325, 375)  Victim was talking to a co-worker and former boyfriend ("Co-worker") on the phone as she normally did on her way home from work until she arrived safely home.  (Id. at 283, 325, 341-43)  Petitioner also went to the back of the bus on the other side of Victim, and Resident sat nearby.  (Id. at 281-82, 375, 384)  Victim and Petitioner were talking and laughing, and Victim invited Petitioner to sit next to her.  (Id. at 282, 325, 374)  Victim allowed Petitioner to listen through her earpiece so he could verify someone was talking on the other end of her phone.  (Id. at 282, 309, 325)  Victim resisted when Petitioner tried to hold her hand.  (Id. at 310)

When Victim mentioned to Co-worker that she was getting off the bus soon, Petitioner told her that she was not getting off the bus.  (Id. at  283).  At first Victim thought Petitioner was playing, but he then told her he was serious about her not getting off the bus.  (Id. at 283, 399)  Petitioner moved her bag to his side and put his hand in his pocket and told Victim that she was not getting off the bus.  (Id. at 284)  Victim explained that she had children and offered him money so that he could take if he let her off the bus.  (Id. at 284-85)  Petitioner responded that money was not the issue, but that "I'm already on the run, there is nothing holding me back from blowing your head off."  (Id. at 284-85)  Two witnesses overheard Petitioner's threat to Victim.  (Id. at 283, 285, 310, 328, 350-51)  Petitioner reached into his lower pants pocket, making Victim believe he had a gun even though she did not see one.  (Id. at 285, 288. 310-12, 328-30. 399-400)  Victim explained

---

residents but the curfew did not apply to residents working jobs requiring them to work past the curfew.  (Id.)

that she had a curfew at Covenant House, and if she did not return before the curfew, the Covenant House staff would know something was wrong.  (Id. at 286)  Petitioner told Victim to shut up and do as he said, and she would be okay.  After checking her curfew story with another Covenant House resident, Petitioner told Victim that she was not required to meet the 10:00 curfew because of her job.  (Id. at 286, 302, 351)

Resident observed that Victim's demeaner had changed, and she appeared to be on the verge of tears.  (Id. at 376-77)  Resident admitted that he did not know the relationship between Victim and Petitioner.  (Id. at 376-77)  Resident continued to look back and check on Victim's welfare, but he stopped after Petitioner asked him why he was looking back.  (Id. at 286, 377)  Resident explained that he also lived at the Covenant House.  (Id. at 377)  At the next stop, Resident got off the bus, even though this was not the Covenant House stop, to get something to eat.  (Id. at 287, 378-79)  When Resident returned to the Covenant House forty-five minutes later, he asked whether Victim had returned.  (Id. at 377, 379)  When he heard she had not, Resident explained that Victim was with a man she appeared not to know, that he was concerned, that "it just didn't look right," but the staff did not act upon his concerns.  (Id. at 365, 379-80)

Co-worker testified that he overheard Petitioner's threat to blow Victim's heard off during their phone conversation, and her pleas concerning a Covenant House curfew and her children, but Victim did not respond to his questions regarding whether she could hear him and what was wrong. (Id. at 350-52)  Petitioner removed Victim's earpiece from her ear and hung-up the phone.  (Id. at 292-93)  Co-worker tried to call Victim back but his return calls, messages, and texts were not answered.  (Id. at 292-93, 352-53)  Although Co-worker testified that he thought Victim was in trouble and that something was wrong, he did not call the police because he did not know Victim's location.  (Id. at 353, 355-56)

4

Victim made repeated eye contact with another passenger ("Passenger") on the bus.  (Id. at 287)  Passenger noticed that Petitioner's hand in his pocket and saw his gun on the Victim and that he would not let Victim get off the bus.  (Id. at 287-88, 461)  When disembarking, Passenger reported to the bus driver what he had witnessed and the presence of a gun.[4]  (Exhibit 1)

Petitioner pushed Victim forward and forced her out the back door of the bus close to the stop near his home.  (Id. at 290, 330)  Petitioner removed the battery from Victim's cell phone to prevent Co-worker from calling back.  (Id. at 292-93)  Passenger exited the bus and said something to Petitioner in an unsuccessful effort to deter Petitioner, and then reboarded the bus.  (Id. at 290-91)

Petitioner forced Victim into the house he shared with his mother and placed her cell phone and battery on the television in his bedroom.  (Id. at 291-92, 395)  Once in his bedroom, Petitioner pulled down his pants and ordered Victim to disrobe.  (Id. at 295, 338, 400-01)  After Petitioner masturbated and then put on a condom, he raped Victim.  (Id. at 332-33, 339, 400-01)  Although Petitioner feared that Victim would report him, Victim convinced him she would not report him because he knew where she lived and persuaded Petitioner to let her go.  (Id. at 295-97)  As they walked outside, Victim picked up her phone and battery.  (Id. at 297-98)  During their conversation outside the house, Victim memorized Petitioner's address and supplied the address to the police.  (Id. at 298-99, 395)  Victim provided Petitioner with a false phone number.  (Id. at 299, 334)

Realizing that Petitioner released her too late to make the final bus home, Victim started walking and found a ride with an acquaintance back to Covenant House.  (Id. at 298-99, 300, 335)

---

[4] Passenger's conversation with the bus driver was recorded on the bus' video surveillance. Thereafter, Passenger identified a still photograph from the surveillance video of the bus showing Petitioner holding a pistol.  (Id. at 463)

Victim called Co-worker about an hour after her phone had been disconnected and "sounded really upset." (Id. at 299, 353)   Although Victim would not tell Co-worker what happened, Co-worker figured out what had happened and urged Victim to contact the police.  (Id. at 353)  Victim was scared and reluctant to contact the police because of the promise she made to Petitioner to release her and knowing he knew where she lived.  (Id. at 354)

The next day, after finishing her shift at a restaurant, she encountered Resident when she returned to Covenant House and shared her anger about his abandoning her on the bus.  (Id. at 303, 380) Staff members witnessed this encounter.  (Id. at 303-05)  Victim explained that she had been kidnapped and sexually assaulted and feared for her safety because she had been threatened with a gun.  (Id. at 369)  When encouraged to make a police report, Victim expressed fear that Petitioner "knew of her whereabouts." (Id. at 365)  A detective with the Sex Crimes Unit testified that it is not unusual for victims to delay reporting such crimes because the victims are scared, embarrassed, or ashamed to tell what happened.  (Id. at 392-93)

After Victim identified the house where the rape occurred, the police identified Petitioner as a suspect.  (Id. at 395-96)  Victim, Resident, and Passenger identified Petitioner in a photo-lineup.  (Id. at 306-07. 381, 397, 402-03, 419-20, 459-62)  After obtaining a search warrant, officers located a replica gun at the house, and Passenger identified the gun as the one he had seen Petitioner use on the bus.  (Id. at 453-56, 460-64)

At trial, the State admitted into evidence surveillance from the bus that corroborated Victim, Resident, and Passenger's testimony.  (Id. at 308-14)  Petitioner testified that he had boarded the bus with Victim and had sex with her in his bedroom that night, but he claimed the sexual encounter was consensual.  (Id. at 483-84)  Petitioner admitted that the gun in evidence was his gun, but he denied having the gun on the bus.  (Id. at 486)  Petitioner also admitted being rude

6

to Resident while they were on the bus together, having seven prior convictions or guilty pleas, and being released from prison shortly before the incident.  (Id. at 478-79, 488, 492)  Petitioner's mother also testified inconsistently with her previous statements concerning working on the day in question, speaking to Petitioner, and talking to the police about Petitioner's gun.  (Id. at 472, 474, 476-77, 494-95))

### III.   Legal Standard

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005).  "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)).  "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11)).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Sittner v. Bowersox, 2017 WL 5518025, at *3 (E.D. Mo. Nov. 17, 2017) (citing Collier, 485 F.3d at 423).

Each of Petitioner's grounds for relief involve claims of ineffective assistance of trial counsel. To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was

deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22-23 (2013) (quotation marks and citation omitted).  Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689; see also Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions."( (citation omitted)).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).  Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. 696….  To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id.  Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment.  So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect.  [Harrington v. Richter,

562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011).  This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id. at [102.]

Williams, 695 F.3d at 831-32.  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Richter, 562 U.S. at 105.  Furthermore, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct.  Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

## IV.    Grounds Raised and Analysis

Petitioner raises three grounds for relief in this Court.  First, Petitioner contends that his trial attorney provided ineffective assistance by that failing to prepare him for a guilty plea.  Next, Petitioner alleges that his trial counsel rendered ineffective assistance by failing to seek an Alford plea.  Finally, Petitioner asserts that his trial counsel provided ineffective assistance by failing to request a jury instruction for a lesser included offense.

### A.    Ground 1:  Failure in Preparing Petitioner for Guilty Plea

Petitioner contends that his trial attorney provided ineffective assistance by failing to prepare him for a guilty plea.  Petitioner presented this claim in his postconviction proceedings.

At the plea hearing on December 2, 2013, Petitioner's counsel informed the trial court that Petitioner had decided to enter a guilty plea to the charged offenses.  But when questioned by the trial court to ensure that his decision to plead guilty was knowing, intelligent and voluntary, Petitioner indicated that he had not had enough time to consult with defense counsel so the court ordered a brief recess so that Petitioner and his counsel could confer.  (ECF No 9-1, Trial Transcript at 11)  When the court reconvened, Petitioner advised the court that he wished to continue with the guilty plea.  (Id. at 13)  Petitioner acknowledged that counsel had explained the

charges against him, and he understood the nature of the charges.  (Id. at 12)  Petitioner stated that

he had discussed with counsel whether or not to enter a guilty plea, and he decided to plead guilty

in exchange for a total sentence of twenty-two years imprisonment.  (Id.)  Petitioner acknowledged

that he understood that he did not have to enter a guilty plea, and that he had a right to a jury trial.

(Id. at 14)  After the State recited the factual basis for the charges of forcible rape and kidnapping,

the following exchange occurred:

> Q.  (By the Court)  [Petitioner], did you do what the assistant circuit attorney says
> you did?
>
> A.  No, sir.
>
> The Court: All right. Thank you.  Let's get the jury when we can and we'll go from
> there.

(Id. at 19)  After selecting a jury, the court started a two-day jury trial that day.  (Id. at 205-531)

In his post-conviction relief motion, Petitioner claimed that counsel did not thoroughly

prepare him for a plea, and he "was forced to proceed to a trial he never wished to have."  (ECF

No. 9-7 at 25)  Petitioner claims that he would have accepted the State's twenty-two year offer if

he had been better prepared, even though he testified at his trial that he had consensual sex with

Victim, "he may have still wanted to admit that his perception of the events was possibly

incorrect."  (ECF No. 9-6 at 20)  Although the post-conviction court scheduled an evidentiary

hearing, Petitioner elected not to testify.  The post-conviction court found that the claim to be

without merit based on Petitioner's decision not to testify in support of the claim.  See Wells v.

Steele, 2015 WL 128080, at *8 (E.D. Mo. Jan. 8, 2015) (Under Missouri law, allegations in a post-

conviction motion are not self-proving, and the movant bears the burden of proving ineffective

assistance of counsel by a  preponderance.).

The Missouri Court of Appeals agreed with the motion's court's conclusion and found that Petitioner's claim properly denied because he decided not to testify in support of the claim. Clemens v. State, 525 S.W.3d 217 (Mem.) Cause No. ED104925 (Aug. 22, 2017) (ECF No. 9-6 at 6).  Specifically, the court, citing Strickland, explained as follows:

> Here, [Petitioner] had the opportunity to testify during the evidentiary hearing to establish how defense counsel should have properly prepared him or that defense counsel had reason to believe [Petitioner's] perception of events needed clarifying; however, [Petitioner] elected not to testify.  Without pointing to specific acts or omissions of defense counsel, [Petitioner] failed to allege facts that indicate defense counsel's performance fell below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at 688.   To the contrary, the record reflects [Petitioner] acknowledged that defense counsel explained the charges against him, and he understood the nature of the charges.  [Petitioner] also stated that he had spoken with defense counsel about whether or not to plead guilty and had a right to a jury trial.  [Petitioner] also understood the plea agreement but when asked if he had done what the prosecutor stated, he said, "No, sir."  Given that [Petitioner] acknowledged affirmatively the steps taken by defense counsel prior to the plea proceeding, and absent conflicting evidence, it is difficult to imagine additional ways in which counsel could have reasonably prepared [Petitioner] for the guilty plea.  *See Lomax v. State*, 507 S.W.3d 619, 626 (Mo. App. E.D. 2016) (holding that without factual allegations indicating that trial counsel had reason to believe the movant would not understand the plea process or questions asked, he failed to establish counsel's performance was deficient.

Id. at 6-7.

Petitioner has not established that he is entitled to relief under the "doubly deferential" standard that applies to ineffective-assistance claims.  Titlow, 571 U.S. at 15.  First, he has not met his burden to show how trial counsel failed to prepare him for a guilty plea.  In fact, the record reflects such a claim.  Second, he has not shown that the decision of the Missouri courts was contrary to, or an unreasonable applications of, Strickland or that the Missouri courts unreasonably applied Strickland to the facts in this case.

Petitioner's claim in Ground 1 will be denied.

### B.      Ground 2: Failure to Request Alford Plea

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to seek an Alford plea.  Petitioner presented this claim in his postconviction proceedings.

Petitioner argues that if trial counsel sought an Alford plea,[5] he would have provided risk mitigation in that he would have avoided both the risk of a longer sentence after a trial and lowered the risk of the plea proceeding going awry.

As discussed earlier during the post-conviction proceedings, Petitioner elected not to testify at the evidentiary hearing.  The motion court concluded that "the claim is wholly speculative because it assumes [the State] would have agreed to the same sentence with an *Alford* plea and that the Court would have accepted such a plea from [Petitioner]."  (ECF No. 9-6 at 7)

The Missouri Court of Appeals found that "mere speculation and conclusions neither affords [Petitioner] the right to another evidentiary hearing nor establishes that defense counsel's performance fell below an objective standard of reasonableness."  (ECF No. 9-9 at 7)  The court also found that "[Petitioner] has not pointed to anything in the record to suggest the State or the trial court would have accepted an *Alford* plea had it been sought by defense counsel."  Accordingly, Petitioner cannot show trial counsel's performance was deficient because he relies on his own self-serving and speculative assertions without any evidentiary support.

---

[5] In North Carolina v. Alford, the Supreme Court explained that "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."  400 U.S. 25, 37 (1970).  The Court further explained that '[t]he standard [for accepting guilty pleas] was and remains whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant."  Id. at 31.  In Missouri, an Alford plea is treated as a voluntary plea of guilty.  Bounds v. State, 556 S.W.2d 497 (Mo. Ct. App. 1977).

Likewise, the motion court concluded that "the claim is wholly speculative because it assumes [the State] would have agreed to the same sentence with an *Alford* plea and that the Court would have accepted such a plea from [Petitioner]."  (ECF No. 9-6 at 47)  Moreover, the  Petitioner acknowledged his inability to show prejudice by alleging that "[i]t is unclear if an *Alford* plea would have yielded the same result [as the negotiated plea agreement of twenty-two year sentence]."  (ECF No. 9-6 at 22)

Petitioner has not established that he is entitled to relief under the "doubly deferential" standard that applies to ineffective-assistance claims.  Titlow, 571 U.S. at 15.  First, he has not met his burden to show that trial counsel's decision not to seek an Alford plea was unreasonable.  Second, he has not shown that the decision of the Missouri courts was contrary to, or an unreasonable applications of Strickland or that the Missouri courts unreasonably applied Strickland to the facts in this case.

Petitioner's claim in Ground 2 will be denied.

### C.      Ground 3: Failure to Request Lesser-Included Instruction

Petitioner asserts that his trial counsel provided ineffective assistance by failing to request a jury instruction for false imprisonment, as a lesser-included offense of kidnapping.  Petitioner presented this claim in his postconviction proceedings.

Missouri law requires that a court provide a lesser-included offense instruction if "there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."  Mo.Rev.Stat. § 556.046.  In State v. Seddens, the court concluded "that all elements of false imprisonment are included in the offense of kidnapping, provided the kidnapping charge is predicated on unlawful confinement and not on unlawful removal."  624 S.W.2d 470,

473 (Mo. Ct. App. 1981).  Thus, only when the kidnapping is effectuated by confinement can false imprisonment be considered a lesser included offense.

The Missouri Court of Appeals determined that Petitioner's trial counsel did not act unreasonably by failing to request the lesser-included offense instruction because Petitioner was not entitled to such instruction under Missouri law.  There is "no obligation to instruct the jury on a lesser-included offense unless a basis exists for acquitting the defendant of the greater offense charged and convicting him of the lesser-included offense." Arnold v. State, 303 S.W.3d 567, 569 (Mo. Ct. App. 2009).  The court held that no construction of facts would have supported a conviction on the charge of false imprisonment and an acquittal on kidnapping because Petitioner's kidnapping charge was based on the unlawful removal of Victim, not unlawful confinement. Therefore, false imprisonment was not a lesser-included offense.

The court also agreed with the motion court's conclusion that Petitioner's claim was "without merit for the reason that [Petitioner] claimed the entire encounter was consensual and that he did not compel the victim to get off the bus with him."  (ECF No. 9-6 at 49)  The court found that "requesting an instruction of false imprisonment would have been inconsistent with [Petitioner's] defense of innocence.  Counsel had no duty to request an instruction that would undermine the entire theory of the case presented at trial."  (ECF No. 9-9 at 10)

Petitioner has not established that he is entitled to relief under the "doubly deferential" standard that applies to ineffective-assistance claims.  Tillow, 571 U.S. at 15.  First, he has not met his burden to show that trial counsel's decision not to request a lesser-included offense instruction of false imprisonment for kidnapping was unreasonable.  Second, he has not shown that the decision of the Missouri courts was contrary to, or an unreasonable applications of Strickland or that the Missouri courts unreasonably applied Strickland to the facts in this case.

15

Petitioner's claim in Ground 3 will be denied.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of Darnell A. Clemons for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **denied**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued, because Petitioner has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a certificate of appealability).

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th, April, 2021.